# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| WALSH CONSTRUCTION COMPANY PUERTO RICO, Plaintiff, v. UNITED SURETY AND INDEMNITY COMPANY, Defendant. | Civil No. 12-1401 (GLS) |

## OPINION AND ORDER

Walsh Construction Company Puerto Rico ("WCC") filed breach of contract claims against United Surety and Indemnity Company ("USIC") seeking compensation under a Subcontractor Performance Bond, which guaranteed the performance by InSite Corporation in the project named Seismic Correction Phase II/Outpatient Addition. Docket No. 1. The instant case was stayed on September 28, 2015, pending the outcome of litigation before the U.S. Bankruptcy Court in In re: Insite Corporation, Bank. Case No. 11-11209 (MCF). Docket No. 179. The stay was lifted on July 1, 2022. Docket No. 197. Both sides moved for summary judgment at Docket Nos. 202 and 205. The case was referred to the undersigned by consent on May 17, 2023. Docket No. 223. After considering the parties' submissions and the applicable law, WCC's motion for partial summary judgment as to liability is **GRANTED** and USIC's motion for summary judgment is **DENIED**.

### I.      Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is warranted when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is considered genuine if "a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party." Velázquez-Pérez v. Developers Diversified Realty Corp., 753 F.3d 265, 270 (1st Cir. 2014) (citation omitted). A fact is "material" if it potentially affects the outcome of the suit. American Steel Erectors, Inc. v. Local Union No. 7, 536 F.3d 68, 75 (1st Cir. 2008). However,

"[c]onclusory allegations, improbable inferences, and unsupported speculation are insufficient to establish a genuine dispute of fact." Velázquez-Pérez, 753 F.3d at 270 (citations omitted).

A party moving for summary judgment bears the burden of proving that there are no genuine issues of material fact and that judgment as a matter of law is warranted. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). The moving party "may affirmatively produce evidence that negates an essential element of the non-moving party's claim" or "point to evidentiary materials already on file […] that demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). "[I]f the summary judgment record satisfactorily demonstrates that the plaintiff's case is, and may be expected to remain, deficient in vital evidentiary support, this may suffice to show that the movant has met its initial burden." Carmona, 215 F.3d at 133; Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015).

In the context of cross-motions for summary judgment, the Court "must evaluate each motion independently, drawing all inferences against each movant in turn." AJC Int'l, Inc. v. Triple-S Propiedad, 790 F.3d 1, 3 (1st Cir. 2015). "Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply require [the Court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." Wells Real Est. Inv. Tr. II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 51 (1st Cir. 2010) (internal citations omitted). Although each motion for summary judgment is to be decided on its own merits, each motion need not be considered in a vacuum. Puerto Rico Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 133 (1st Cir. 2010).

## II.   Uncontested Facts

After examining the parties' submissions, but having disregarded any legal arguments and conclusory statements in the parties' statements of facts,[1] the Court finds that the following material facts are not in dispute:

> 1. On or about September 30, 2010, the Department of Veterans Affairs awarded WCC a contract titled Seismic Correction Phase II, Outpatient Addition (the "Project"). WCC's Statement of Uncontested Facts at Docket No. 202-2 ("WCC SUF") ¶ 1.

---

[1] See Cotto-Vázquez v. United States, 2021 WL 965825, at *28 n.7 (D.P.R. 2021) (quoting Cruz-Acevedo v. Toledo-Dávila, 660 F.Supp.2d 205, 209 (D.P.R. 2009) ("[a]s a general principle, parties may not include legal arguments or conclusions in their statement of facts.")).

2. WCC entered in a subcontract with InSite Corporation ("InSite") on November 23, 2010, for the performance of certain construction services in the Project (the "Subcontract"). WCC SUF ¶ 2; Docket No. 1-1; USIC's Statement of Uncontested Facts at Docket No. 205-1 ("USIC SUF") ¶ 1; Docket No. 205-2.

3. USIC issued a Subcontractor Performance Bond on March 22, 2011 (the "Bond") in the amount of $3,175,000, naming WCC as obligee and InSite as principal, to secure the faithful performance of InSite's obligations under the subcontract with WCC. WCC SUF ¶ 3; Docket No. 1-2; USIC SUF ¶ 2.

4. On December 30, 2011, WCC issued and notified a Notice of Default to InSite. The letter stated that InSite's material breach of the terms of the Subcontract has caused damages to WCC. WCC stated that InSite was in breach and default of the subcontract agreement because: (1) concrete supplier progress payment check for the month of October 2011 was return due to insufficient funds, (2) rebar supplier current balance had exceeded past 120 days overdue, and (3) concrete pump supplier balance had exceeded past 60 days overdue. The letter further stated that it constituted a Notice of Default under the Subcontract and that InSite's failure to commence and satisfactorily continue correction of its defaults within seventy-two (72) hours would lead WCC to pursue the remedies in Article 8.1 of the Subcontract. The letter also demanded that InSite give adequate assurance in writing of its intent or ability to perform the remainder of the Subcontract within five (5) calendar days. WCC SUF ¶¶ 5, 7; Docket Nos. 202-3, 205-5; USIC SUF ¶ 4.

5. On December 30, 2011, after notification of the Notice of Default, InSite filed a Chapter 11 petition before the U.S. Bankruptcy Court for the District of Puerto Rico (Case No. 11-11209 (MCF)). WCC SUF ¶ 8; USIC SUF ¶ 3.

6. On January 3, 2012, WCC sent USIC a claim under the Bond and demanded that USIC respond to WCC's Notice of Default in accordance with the terms of the Bond. WCC SUF ¶ 9; Docket No. 202-3; USIC SUF ¶ 5.

7. On March 29, 2012, the Bankruptcy Court entered an Order granting InSite's Motion to Assume the Subcontract. InSite never returned to the site and/or prosecuted any work under the Subcontract. WCC SUF ¶ 19; USIC SUF ¶ 15; Case No. 11-11209 (MCF) at Docket No. 72.

        8.        On December 18, 2012, the Bankruptcy Court entered an Order denying WCC's motion for relief from stay to terminate the Subcontract with InSite. USIC SUF ¶ 17; Case No. 11-11209 (MCF) at Docket No. 141.

### III.    Discussion

The question before the Court is what actions had to be taken by WCC to trigger USIC's obligation to respond under the Bond and what impact, if any, did InSite's bankruptcy have on WCC's ability to cause USIC's compliance with its obligations under the Bond. And ultimately whether WCC's actions or inactions during those bankruptcy proceedings could result in the forfeit of its claim against USIC under the Bond. We set the landscape by summarizing the obligations assumed by the parties under the Subcontract and the Bond, and by drawing conclusions from those written commitments. A summary of InSite's bankruptcy proceedings follows with an analysis of USIC's arguments of forfeit.

    A.    **The Contractual Obligations**

The controversies here stem from two (2) agreements—the Subcontract between WCC and InSite, and the Bond between USIC and InSite for the benefit of WCC. Section 8.1 of the Subcontract between WCC and InSite provides that "[i]f [InSite] […] materially breaches a provision of [the Subcontract], **and fails within seventy-two (72) hours** after receipt of written notice […] **to commence and continue satisfactory correction of such default** with diligence and promptness, [WCC], **without prejudice to any other rights or remedies**, **shall have the right to any or all of the following remedies**:" (i) supply workers, materials, and equipment to complete the work of the Subcontractor and charge the costs to the Subcontractor; (ii) contract with other contractors to perform the work of the Subcontractor and charge the costs to the Subcontractor; and/or (iii) withhold payment of any moneys due to Subcontractor pending corrective action. Docket Nos. 202-3, 205-2 (emphasis added). Section 8.2 of the Subcontract provides that "[i]f the Subcontractor fails to commence and satisfactorily continue correction of a default within seventy-two (72) hours after the notice is issued under Paragraph 8.1, then [WCC] **may, in lieu or in addition to the remedies provided therein,** terminate this [Subcontract] or a portion thereof and use any materials, implements, equipment, appliances or tools furnished by or belonging to the Subcontractor to complete the Subcontractor's Work. […] In the event of Termination for Default, Subcontractor shall receive no further payment of any unpaid portion of the Subcontract Price until such time as the Subcontract Work is completed, at which time

Subcontractor will be entitled to the unpaid portion of the Subcontract Price, less all of the costs incurred by [WCC] in so performing the Subcontractor's Work […] which shall be deducted from any moneys due or to become due the Subcontractor. The Subcontractor and its surety shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the Subcontract Amount." Docket Nos. 202-3, 205-2 (emphasis added).

The Subcontract between WCC and InSite incorporates the Bond between InSite and USIC. Docket No. 205-2. The Bond provides that USIC is bound to WCC in the penal sum of $3,175,000, "for the payment of which the Subcontractor and Surety bind themselves, and their respective heirs, administrator, executors, successors and assigns, **jointly and severally**". Docket Nos. 1-2, 205-3 (emphasis added). The Bond incorporates by reference the Subcontract and, in its pertinent parts, provides that: (1) "If Subcontractor shall promptly and faithfully perform said Subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect." (2) "The Surety agrees that no change, extension of time, alteration, addition, deletion, amendments or other modification of the terms of either the said Subcontract or the Prime Contract between Obligee and the Project Owner, or both, or in the said work to be performed, or in the specifications, or in the plans shall in anywise affect its obligation on this Bond except that the penal sum of this Bond shall increase directly with any amendments issued to the Subcontract; and it does hereby waive notice of any such changes, extensions of time, alterations, additions, deletions, amendments, and other modifications." (4) "Whenever Obligee has declared Subcontractor to be IN DEFAULT OF THE SUBCONTRACT, the Surety shall, within fifteen (15) calendar days of its receipt of notice from Obligee that Subcontractor is in default, respond as follows:

- a. Complete the Subcontract Work in accordance with the Subcontract terms and conditions; or

- b. Obtain bids or offers from contractors acceptable to Obligee for completing the Subcontract in accordance with its terms and conditions, and upon determination by Obligee and the Surety jointly of the lowest responsible bidder or offeror, arrange for a subcontract between such completion contractor and the Obligee, and arrange for new performance and payment bonds for such completion contractor from a surety acceptable to the Obligee. […]; or

- c. Tender to Obligee the penal sum of the Bond less any amounts expended by the Surety in financing the Subcontractor […].

5

  d.  [D]eny its liability in whole or in part and notify and explain to the Obligee the reasons why the Surety believes it does not have liability for the default,[…].

  e.  [O]btain an extension of up to fifty (50) calendar days in the time to act under this Paragraph 4 by financing performance of the Subcontract Work during the extension period on a schedule and in a manner acceptable to Obligee. […].

  f.  Upon declaration that Subcontractor is in default, Obligee may proceed to perform the Subcontract Work in accordance with the terms of the Subcontract. Obligee's cost to perform Subcontract Work shall be credited against any remaining Subcontract balance and then reimbursed by Surety. Reimbursement by Surety shall reduce the penal sum of this Bond by the amount of reimbursement to Obligee."

(9) "No right of action shall accrue on this Bond to or for the use of any person or corporation other than Obligee or the heirs, executors, administrators, assigns or successors of Obligee." WCC SUF ¶ 4; Docket Nos. 1-2, 205-3.

  USIC sustains that, under the terms of the Subcontract and the Bond, WCC was required to terminate the Subcontract under Article 8.2 prior to being able to trigger USIC's obligations under the Bond. And that because WCC never formally terminated the Subcontract (InSite filed for bankruptcy, InSite assumed the Subcontract as an executory contract, and WCC was not granted a lift of stay to terminate the Subcontract), USIC has no obligations under the Bond. But USIC's interpretation is not supported by the clear and unambiguous terms of the Subcontract. Pursuant to the text of the Subcontract between InSite and WCC, the agreement was: (1) in the event of a material breach by InSite, WCC had to give InSite a written notice so that InSite could cure the default within 72 hours; (2) if InSite failed to cure the default in such time, WCC **could choose** ("**shall have the right**") to finish the work on its own, retain a new contractor, and/or withhold payment pending corrective actions by InSite. Docket No. 202-3. Pursuant to Section 8.2, WCC **could** ("**may**"), **in lieu or in addition to** finishing the work on its own, retaining a new contractor, and/or withholding payment pending corrective actions by InSite, terminate the Subcontract, allowing WCC to use any materials, tools, or equipment of InSite to complete the work, and to withhold further payments until the work was completed and an accounting of WCC's costs and expenses in the completion of the work could be achieved. InSite would have had no additional right under the Subcontract and would subsequently be paid any monies owed (after deductions of WCC's costs and expenses) or would be held liable (along with USIC) for any of WCC's costs and expenses that could exceed the balance of the Subcontract.

Under the Puerto Rico Civil Code,[2] an enforceable contract exists when a plaintiff establishes (1) the contracting parties' consent; (2) a definite object of the contract; and (3) the parties' cause for the obligation. P.R. Laws Ann. tit. 31, § 3391. Once the existence of a contract is established, "if the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties," the Court holds the parties to the literal sense of the terms. Id. § 3471; González v. John Hancock Mut. Life Ins. Co., 927 F.2d 659, 660 (1st Cir. 1991) (internal quotations omitted). In other words, "courts are barred from considering extrinsic evidence in a written contract where the terms are clear and unambiguous." Triangle Cayman Asset Co. v. LG and AC, Corp., 52 F.4th 24, 32 (1st Cir. 2022). The terms of the Subcontract are clear and unambiguous in that WCC could choose to terminate the Subcontract (preventing InSite from curing any defaults or claiming a right to completing the subcontracted work) but was not required to do so prior to choosing to complete the subcontracted work.[3] Such a right— to choose between termination or completion of the work after notification of default and failure to cure— accrued for the benefit of WCC not InSite or USIC. USIC is not a party to the Subcontract. A contract is only valid between the parties who executed it and their heirs. P.R. Laws Ann. tit. 31, § 3374. See also Feliciano-Muñoz v. Rebarber-Ocasio, 2021 WL 3887680, at * 2 (D.P.R. Mar. 23, 2021) ("[I]n Puerto Rico, contracts are generally only valid between the parties who execute them, and actions arising out of a contract can be prosecuted only by on contracting party against the other.") (quoting Dantlzer, Inc. v. Lamas-Besos, 2010 WL 2572618, at *3 (D.P.R. June 22, 2010)). As such, no rights or obligations could accrue in favor of USIC in the Subcontract (such as requiring termination of the Subcontract) except, and until, USIC made payment under the Bond and could seek from WCC any monies owed to InSite.

USIC argues that the terms of the Bond, which incorporate the Subcontract, support its position that termination of the Subcontract was a prerequisite to trigger USIC's obligations under the Bond. But this argument is defeated by the very nature of the obligation assumed by USIC under the Bond and by the clear text of the Bond. USIC's obligation as surety under the Bond was joint and several with the obligation of InSite. That means that USIC could not require WCC, the

---

[2] The 2020 Civil Code went into effect November 28, 2020. See 2020 P.R. Laws Act 55 (June 1, 2020). We apply the law as it was at the relevant time.

[3] This is consistent with the language of the Bond which allowed WCC to complete the work and seek reimbursement by USIC (thereby reducing the penal sum under the Bond). See Docket Nos. 1-2, 205-3 at ¶ 4(f).

creditor under the Bond, to exhaust a claim against InSite prior to seeking compensation from USIC. P.R. Laws Ann. tit. 31, § 4892. As explained by the Puerto Rico Supreme Court in Mansiones P. Gardens, Inc. v. Scotiabank, 14 P.R. Offic. Trans. 664 (1983), the joint surety has the "responsibility to pay the debt before the exhaustion of the assets of the principal obligor." Id. at 672. Such an obligation of the surety exists regardless of whether the debtor seeks relief for bankruptcy. F.D.I.C. v. Municipio de Ponce, 904 F.2d 740, 747 (1st Cir. 1990). Moreover, the text of the Bond does not require termination either. The Bond refers to the Subcontractor being declared by the Obligee IN DEFAULT OF THE SUBCONTRACT (emphasis in the original). Docket No. 205-3 at p. 1. The Bond does not require a particular choice of words or terminology for WCC to hold InSite in default, nor does it require a notice of termination to trigger the Bond. Cf. Arch Ins. Co. v. Graphic Builders LLC, 36 F.4th 12, 17 (1st Cir. 2022) (under Massachusetts law, insurance policies are subject to the rules of contract interpretation. The performance bond had no ambiguities, and as such was subject to its plain interpretation). While InSite could not be found in default prior to the 72-hour notice to which it was entitled under Section 8.1 of the Subcontract, there was no contractual impediment for WCC to hold InSite on default afterwards. Indeed, the law of the case is clear (as held by the Bankruptcy Court and the First Circuit) that, after assumption of the Subcontract, InSite defaulted on its obligations under the Subcontract and did not complete the subcontracted work. See Case No. 12-281(MCF) at Docket No. 123 at 3; In re Insite Corporation, Inc., 906 F.3d 138 (1st Cir. 2018).

   The Bond gives USIC the option of completing the work, obtaining bids to complete the work, paying the penal sum, denying liability, or seeking an extension of time to investigate the matter while financing the subcontract work. It also gives WCC the option of completing the subcontracted work and seeking reimbursement—reducing the penal sum—from USIC. USIC complains that, by not formally terminating the Subcontract, WCC deprived USIC of the ability to choose to complete the work or to obtain bids to complete the work because any such actions would have interfered with InSite's interests in the Subcontract. But that argument ignores one crucial fact. When compelled by WCC to comply with the terms of the Bond, there was nothing preventing USIC from seeking relief from the Bankruptcy Court to perform under the Bond. USIC's argument that it would have lacked standing to seek a lift of stay is unpersuasive. USIC had a contractual relationship with InSite that contemplated the possibility of USIC completing the work or obtaining bids to complete the subcontracted work. Even though USIC is not a party

to the Subcontract, if performance under the Bond was sought from USIC and USIC deemed that such performance could impact InSite's interests in the Subcontract, there was nothing preventing USIC from moving the Bankruptcy Court to lift the stay to allow it to perform the work or obtain bids to complete the work guaranteed under the Bond. USIC chose not to do so.[4]

### B.   Forfeit Analysis

USIC's defense rests on WCC's actions during the InSite bankruptcy proceedings and on the effect that such actions may have on the obligations assumed by USIC under the Bond. In short, USIC contends that WCC defaulted on its obligation to diligently pursue a claim against InSite in the bankruptcy proceedings and that WCC's inaction effectively caused it to forfeit any claims that WCC may now have against USIC under the Bond. A summary of the proceedings before the Bankruptcy Court follows.

On December 30, 2011, after notification of the Notice of Default sent by WCC, InSite filed a Chapter 11 petition before the U.S. Bankruptcy Court for the District of Puerto Rico. Case No. 11-11209 (MCF) at Docket No. 1. On February 13, 2012, InSite moved the Bankruptcy Court for an order authorizing it to assume the Subcontract with WCC as an executory contract. Id. at Docket No. 44. WCC was notified of the request and did not oppose. On March 29, 2012, the Bankruptcy Court entered an Order granting InSite's Motion to Assume the Subcontract. Id. at Docket No. 72. There is no dispute that InSite never returned to the site nor prosecuted any additional work under the Subcontract. WCC SUF ¶ 19. Thereafter, WCC moved for a lift of stay so that it could terminate the Subcontract with InSite. Case No. 11-11209 (MCF) at Docket No. 107. On December 18, 2012, the Bankruptcy Court denied WCC's motion for relief from stay. Id. at Docket No. 141.

On May 29, 2012, InSite initiated an adversary proceeding against WCC. Case No. 12-281(MCF) at Docket No. 1; WCC's Additional Statement of Undisputed Facts at Docket No. 210-1 ("WCC ASUF") ¶ 18. On October 29, 2015, the Bankruptcy Court in the adversary proceeding issued an Opinion and Order holding that WCC did not violate the automatic stay. WCC ASUF ¶ 19; Case No. 12-281(MCF) at Docket No. 123. Among other matters, the Bankruptcy Court held that "after the assumption of contract was approved by the Court, Debtor did not cure the defaults

---

[4]   When asked about this during oral arguments, USIC admitted that it could have but was not required to move for a lift of stay to perform under the Bond. Oral Argument at 33:07, held on April 16, 2024, Walsh Construction v. United Surety & Indemnity Co., No. 12-1401 (GLS).

by making payments to the subcontractors and suppliers, nor did it complete any further work under the contract." Case No. 12-281(MCF) at Docket No. 123 at 3; WCC ASUF ¶¶ 19-20. The Bankruptcy Court dismissed the Adversary Complaint on March 29, 2016. Case No. 12-281 (MCF) at Docket No. 147. InSite appealed the decision of the Bankruptcy Court to this District Court in Civil No. 16-2010 (FAB) and then to the U.S. Court of Appeals for the First Circuit. WCC ASUF ¶¶ 23-25.

The First Circuit in In re Insite Corporation, Inc., 906 F.3d 138 (1st Cir. 2018) agreed with the Bankruptcy Court that WCC had not violated the automatic stay but remanded the case to the Bankruptcy Court to determine whether InSite was entitled to equitable recovery if WCC had benefitted at InSite's expense. In its opinion, the First Circuit expressed that InSite materially breached the Subcontract with WCC. Id. at 146. And that once InSite defaulted on its obligations, WCC could take any of the remedial actions set forth in Section 8.1 of the Subcontract, including completing InSite's work. Id. at 147 ("Once Insite failed to timely cure its defaults, Walsh could additionally invoke the remedies found in Section 8.1 of the subcontract. Thus, the subcontract gave Walsh the right to use the progress payments to cure Insite's defaults and complete Insite's work."). The First Circuit reasoned that InSite had no right to withheld payments under the Subcontract until it had completed the job and, because InSite did not complete the job, the withheld funds were not property of the estate and WCC did not violate the automatic stay by refusing to release those funds to InSite. Id. at 148-149. Implied in the First Circuit's decision is that the remedial actions in Section 8.1 of the Subcontract (which include WCC's right to complete the subcontracted work without terminating the Subcontract) were automatically available to WCC once the 72-hour notification window of Section 8.1 elapsed without a cure of the defaults by InSite. See id. at 146 n. 9. After the remand, the Bankruptcy Court again dismissed the adversary proceeding on August 12, 2012. Case No. 12-281 (MCF) at Docket No. 219.[5] InSite's bankruptcy petition was voluntarily dismissed on November 28, 2022. Case No. 11-11209 (MCF) at Docket Nos. 334, 337.

USIC argues that by allowing the Subcontract to be assumed by InSite and by not moving in a timely fashion for a lift of the stay to terminate the Subcontract WCC forfeited its rights under

---

[5] Another appeal to this District Court followed, which was dismissed on September 29, 2022. Civil No. 21-1404 (JAG).

the Bond. With respect to the assumption of contracts under Section 365 of the Bankruptcy Code, USIC argues that the order of the Bankruptcy Court approving the assumption of the Subcontract is also a finding that there were no prior defaults of the Subcontract or that any such defaults were cured. And that, accordingly, WCC is precluded from arguing that any such defaults would trigger the obligations under the Bond. There is no argument that "[a] bankruptcy court order approving the assumption of an executory contract […] is necessarily a finding that no uncured defaults exist." 3 Collier on Bankruptcy at § 365.06. See also In re Arriva Pharmaceuticals, Inc., 456 B.R. 419, 424 (N.D. Cal. April 26, 2011) (citing string of cases supporting Collier). But the assumption of an executory contract cannot be a free pass for post-petitions defaults of the debtor under the contract. There is no dispute that InSite defaulted on its obligations after assuming the Subcontract. Such a post-assumption default is deemed a rejection of an executory contract under 11 U.S.C. § 365(g)(2). 2 Norton Bankr. L. & Prac. 3d at §46:25. In turn, a post-assumption rejection is deemed a breach of the contract giving the contracting party right to claim damages for the breach. 3 Collier on Bankruptcy at § 365.10. Therefore, because there was no requirement for WCC to terminate the Subcontract prior to declaring InSite on default and because there is no dispute that InSite defaulted after the assumption of the Subcontract (giving WCC a right of action for breach of contract), it would make little sense to hold that WCC's failure to oppose the assumption of the contract would forever bar any cause of action against InSite for its post-petition defaults or against USIC under the Bond.[6] USIC also argues that because WCC was denied lift of stay to terminate the Subcontract with InSite, it is precluded from claiming liability against USIC under the Bond. But the only effect of WCC's inability to lift the stay was that it was precluded from seeking relief

---

[6] USIC's argument that the decision of the Bankruptcy Court to allow the assumption of the contract has *res judicata* effect on this action against USIC is unpersuasive. *Res judicata* requires: (1) a prior judgment on the merits that is final and unappealable, (2) that the prior and current actions share a perfect identity of both "thing" and "cause," and (3) that both actions share a perfect identity of the parties and the capacities in which they acted. McMillan v. Rodríguez-Negrón, 511 F.Supp.3d 75, 82 (D.P.R. Dec. 18, 2020) (citing P.R. Laws Ann. tit. 31, § 3343). The "thing" refers to the object or matter at issue in a judicial action. A&P Gen. Contractors v. Asoc. Caná, Inc., 110 D.P.R. 753, 764 (1981) (10 P.R. Offic. Trans. 984). "Cause" refers to the main ground or origin of the action (i.e., the basis or reason for seeking relief). Id. at 765. With respect to the identity of parties, if the litigants in both cases are not the same, at the very least, the real parties in interest must be the same (the litigants must be in privity with the parties in the prior action) for *res judicata* to apply. A&P Gen. Contractors, 110 D.P.R. at 766-767. Even if we assume that the Bankruptcy Court's decision to allow the assumption of the Subcontract was a decision on the merits that is final and unappealable, there is no perfect identity of the thing, the cause or the parties here. The matter before the Bankruptcy Court was the performance of InSite under the Subcontract. The matter before the Court here is the obligation of USIC under the Bond. The implicated parties before the Bankruptcy Court were InSite and WCC. USIC was not a party to the Subcontract.

from InSite throughout the pendency of the bankruptcy proceedings. Having established that the contract between the parties did not require termination of the Subcontract to pursue a claim against USIC, the fact that WCC was unable to lift the automatic stay is of no consequence to USIC.

In sum, there is no dispute that InSite defaulted and never completed the subcontracted work. It is also undisputed that USIC has been on notice of WCC's claims under the Bond since the year 2012. Rather than reaching an agreement with WCC to perform under the Bond (by completing the subcontracted work or otherwise) or seeking relief from the Bankruptcy Court to perform under the Bond, USIC chose to rest on its interpretation that termination of the Subcontract was a precondition for WCC to compel its performance under the Bond. WCC completed the work at its own expense, which was an action allowed by both Section 8.1 of the Subcontract and the Bond (See Docket Nos. 1-2, 205-3 at ¶ 4(f)). But there were unsatisfied obligations under the Subcontract and the Bond. The Bond contemplates that USIC's obligation would "remain in full force and effect" until InSite "promptly and faithfully perform[ed]" the work. This did not happen. WCC's breach of contract claim against USIC remains.

## IV. Conclusion

For the reasons discussed above, WCC's motion for partial summary judgment is **GRANTED** and USIC's motion for summary judgment is **DENIED**. The parties will submit their joint proposed Pretrial Order **by August 7, 2024**. A Pretrial Conference is scheduled for **September 9, 2024, at 10:00 a.m.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of July 2024.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge