**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| WALSH CONSTRUCTION COMPANY PUERTO RICO,<br>Plaintiff,<br><br>v.<br><br>UNITED SURETY AND INDEMNITY COMPANY,<br>Defendant. | Civil No. 12-1401 (GLS) |

**OMNIBUS OPINION AND ORDER**

Pending before the Court are Walsh Construction Company Puerto Rico's ("WCC") motion for fees and costs at Docket No. 311. United Surety and Indemnity Company's ("USIC") filed a response at Docket No. 328 and WCC's replied at Docket No. 329. Also pending before the Court is USIC's motion for additional findings of fact under Rule 52(b) of the Federal Rules of Civil Procedure at Docket No. 317 and WCC's opposition thereto at Docket No. 320. Also pending is WCC's motion to compel USIC to post a bond pending appeal at Docket No. 324 and USIC's opposition and request to stay the enforcement of the judgment without the imposition of a bond at Docket No. 325. For the reasons discussed below, WCC's motion for attorney fees and costs is **DENIED WITHOUT PREJUDICE** pending further proceedings before the First Circuit and this Court, USIC's motion for additional findings of facts is **DENIED**, and WCC's motion for bond is **DENIED** and USIC's motion to stay enforcement of monetary judgment without posting a bond is **GRANTED**.

## I. Discussion

### 1. USIC's Motion under Rule 52(b) of the Federal Rules of Civil Procedure

USIC filed a motion under Rule 52(b) of the Federal Rules of Civil Procedure to "preserve the integrity of the factual record for purposes of appellate review." Docket No. 317. To this end, it proposes a new finding of fact to "amplify" the Court's finding on Mark Brunski's ability to authenticate the records pertaining to invoices and payments made by WCC to complete InSite's scope of work. Id. at p. 3. USIC also proposed two additional facts bearing on the explanation of why WCC was required to procure 2,000 tons of lightweight concrete at the request of the owner

of the project. Id. And another fact pertaining to the cubic yards of lightweight concrete WCC used in the project. Id. WCC opposed arguing that USIC has not demonstrated that the findings of fact made by the Court were not supported by evidence in the record and has not explained why adoption of the proposed facts is necessary to correct an error made in the findings of the Court. Docket No. 320.

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court was required to make findings of facts and conclusions of law after the close of the evidence. FED. R. CIV. P. 52(a). The Court did this in its Opinion and Order at Docket No. 309. Importantly, the Court was not required to make findings as to all factual questions that were raised in the case, but only to set forth those facts that would allow it to explain its analysis and conclusions of law. Fairest-Knight v. Marine World Distributors, Inc., 2010 WL 500409, at *1 (D.P.R. Feb. 3, 2010) (citing Valley v. Rapides Parish School Bd., 118 F .3d 1047,1053-54 (5th Cir.1997)). Rule 52(b) of the Federal Rules of Civil Procedure provides a vehicle for a party to move the Court to amend its findings or make additional findings before proceeding to appeal. FED. R. CIV. P. 52(b). The application of this rule "enable[s] the appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for the conclusion of law[.]" 9C Wright & Miller, Federal Practice and Procedure § 2582 (3d ed. 2008). But the rule is not meant for the losing party to rehash arguments or to present issues that were not brought before the trial court. The movant is required to establish that a "harmful error" was made and that, without the proposed amendments or additional findings, a "manifest injustice" would occur. Id. at §2582 (2026 Supp.); Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Crédito Oriental, 2022 WL 4935400, at *5 (D.P.R. Sept. 30, 2022) (the rule's "purpose is to permit the correction of any manifest errors of law or fact that are discovered, upon reconsideration, by the trial court.") (quoting Nat'l Metal Finishing Co. v. BarclaysAmerican/Com., Inc., 899 F.2d 119, 123 (1st Cir. 1990)). To this end, the motion "must raise questions or substance by seeking reconsideration of material findings of fact […] to prevent manifest injustice". 9C Wright & Miller at § 2582 (2008). And findings of fact will not be amended when such amendments are futile. Id. § 2582 (2026 Supp.).

USIC does not argue that a harmful error has been made by the Court, that the Court's findings of fact are not supported by the evidence presented during trial, or that the Court ignored evidence that was material when it made its findings. Indeed, USIC does not even argue that failure to amend the findings of fact would result in manifest injustice. USIC merely argues in a

conclusory fashion that the proposed additional findings would "ensure internal consistency of the factual record, preserve accuracy for appellate review, and clarify the evidentiary foundation for the Court's damages determination." But a review of the proposed new facts reveals that these are either not material to the Court's analysis or already accounted for in the Court's conclusions.

Take proposed additional fact number 1— to establish the complete chain of custody and processing of invoices. The Court already concluded that Mark Brunski did not issue the payment of invoices himself (see Docket No. 309 at p. 13) and that the checks were made by accounting in WCC. Those facts were not in dispute. But those were not the basis of the Court's conclusion on Mark Brunski's ability to authenticate the invoices and to testify about the amounts paid by WCC to complete InSite Corporation's ("InSite") scope of work. The factual basis for that conclusion is clearly contained in the Court's Findings of Fact No. 21 and the Court's analysis and credibility determination at Docket No. 309 pp. 11-13. See Valentín Marrero v. Puerto Rico, 2020 WL 5992019, at *1-2 (D.P.R. Oct. 9, 2020) ("the Court need not include **all** purported facts in its findings, only those deemed to be **material** for the controversy at bar") (emphasis in the original).

Proposed additional facts numbers 2 and 3 are intended by USIC to "establish the factual predicate explaining why WCC was required to procure approximately 2,000 lightweight aggregates at the Owner's request." Docket No. 317 at p. 3. But the fact that InSite may have submitted a lightweight concrete proposal and that the owner of the project caused WCC to obtain an alternate lightweight concrete mix was immaterial for the Court's analysis. Relying on the language of the Subcontract with InSite and the credible testimony received during trial, the Court concluded that "the Subcontract was a lump sum all-inclusive contract[,]" which obliged InSite to provide all materials, labor, and equipment for the concrete, and to procure, purchase and place all components of the lightweight concrete on the project. See Docket No. 309 at Findings of Facts Nos. 6-8. Based on the testimony of Mark Brunski, the Court also concluded that WCC paid $965,859.32 for lightweight concrete and aggregate of concrete to perform and finish InSite's scope of work in the Project, and that, even though there was lightweight aggregate concrete available in Puerto Rico, the owner of the project caused WCC to acquire 2,000 tons of the lightweight aggregate from the United States. Id. at Findings of Facts Nos. 23-25. USIC proposed facts are immaterial to the Court's analysis because the rejection of InSite's proposal for lightweight concrete and the fact that the owner of the Project required different lightweight concrete would not alter the Court's conclusion that, under the Subcontract, it was InSite who was

obliged to purchase the lightweight concrete for the Project. Furthermore, the Court already addressed and rejected USIC's argument that, because the terms of Exhibit XX of the Subcontract provided that "[a]ny increase in [the price of lightweight concrete] due to non-acceptance of designer of mix will be discussed between Walsh and Insite to reach mutual agreement," the increase on the price of the lightweight concrete due to the owner's request would have been excluded from InSite's scope of work. See Docket No. 309 at pp. 19-21 (relying on the fact that InSite's was a lump sum contract, that InSite was obliged to provide all components of the lightweight concrete for the Project, that Mark Brunski's testimony corroborated the intent of the parties that InSite would pay for all lightweight concrete, and that, to establish a different intent of the parties to the Subcontract, USIC would have had to present evidence to counter the testimony of Mark Brunski and it did not).

Finally, USIC seeks additional fact number 4 to establish the cubic yards of lightweight concrete in the Project. But, again, such a fact does not change the outcome. The Court found that regardless of the amount of concrete finally poured into the Project, InSite was responsible for paying for all concrete and that WCC established the authenticity of the invoices and the amounts paid by WCC for lightweight concrete. Docket Nos. 309 at Findings of Facts Nos. 6-8, 21, 23-26 (WCC paid $240 per cubic yard of lightweight concrete). And, importantly, the Court already rejected USIC' reliance on expert testimony to try to establish that the amount of concrete poured into the Project exceeded the amounts allowed in InSite's scope of work. See Docket No. 309 at p. 21 (rejecting the expert testimony on this issue as the expert never visited the site, his opinion was based on aerial photographs of the project and was conclusory on this issue).

In sum, USIC has not argued, much less demonstrated, that the findings made by the Court were erroneous or unsupported by the evidence. See Oriental Fin. Grp., 2022 WL 4935400, at *13 (when findings are supported by the record, relief under Rule 52(b) is not warranted); Fairest-Knight, 2010 WL 500409, at *1 (to prevail on a Rule 52(b) motion to amend, the moving party must show that the findings of fact or conclusions of law are not supported by evidence in the record) (citation omitted). USIC simply rests on its perception that the "findings are either not sufficiently detailed or did not affirmatively find specific facts helpful" to USIC, which is insufficient for Rule 52 relief. See Addamax Corp. v. Open Software Found., Inc., 152 F.3d 48, 55 (1st Cir. 1998) (court not required to make findings on every detail, to discuss all of the evidence that supports each of the findings made, or to respond individually to each evidentiary or factual

contention made by the losing side) (citations omitted). No additional findings of fact are warranted. See e.g., Fairest-Knight, 2010 WL 500409, at *1 (no relief warranted when party points to no error and merely seeks modifications that it believes will enhance its chances of success on appeal). Accordingly, USIC's request is **DENIED**.

**2. WCC's Motion for Attorneys' Fees and Costs**

WCC moved the Court for the imposition of attorneys' fees and costs against USIC. This request stems from the language of the bond issued by USIC and the Court's Opinion and Order at Docket No. 309, from which one can clearly conclude that WCC is a prevailing party. WCC also premises its requests on paragraphs 6(b), 6(c), and 7 of the bond, and Article 9.3 of the subcontract between WCC and InSite. But WCC not only seeks attorneys' fees and costs incurred in this litigation. It also seeks all attorneys' fees and costs incurred by WCC since the default by InSite in the year 2012, including fees incurred during InSite's bankruptcy proceedings and appeals processes in those proceedings. WCC seeks a total of $1,421,955.80 in attorneys' fees and costs. This includes $1,363,343.02 in attorneys' fees incurred by the law firm DeVlieger Hilser, P.C. ("DVH") from 2012-2025 (see Docket Nos. 311-1, 312, 313-3), $37,792.44 in expert fees (see Docket Nos. 311-2, 311-3), $10,615.49 in travel expenses (see Docket Nos. 311-2, 311-4, 311-5), $7,298.35 for fees incurred in mediation (see Docket Nos. 311-2, 311-6), and $2,906.50 for other preliminary legal expenses paid to the law firm of Jennings, Haug & Cunningham, L.L.P. in the year 2012 (see Docket Nos. 311-2, 311-7). Docket No. 311.

USIC opposed arguing that WCC is not entitled to recover legal fees incurred in other proceedings to which USIC was not a party and in which WCC sought relief from the bankruptcy petition filed by InSite. USIC argues that any such fees should have been sought against InSite in those proceedings, and that, if WCC intended to pursue those fees in these proceedings, these should have been included as part of its claim for breach of contract, subject to proof at trial. USIC does not dispute that WCC is a prevailing party and entitled to attorneys' fees and recoverable costs in this litigation under Rule 54 of the Federal Rules of Civil Procedure. But it does object to the taxing of expert fees ($37,792.44) as recoverable costs as the expert's testimony was eliminated and not considered at trial. USIC requests that the Court order WCC to segregate the fees and costs recoverable under Rule 54 and, once those are submitted, to be allowed an opportunity to respond. Docket No. 328.

A brief factual and procedural refresher is necessary for context. On or about September 30, 2010, the Department of Veterans Affairs awarded WCC a contract titled Seismic Correction Phase II, Outpatient Addition (the "Project"). Docket No. 237 Uncontested Facts No. 1; Docket No. 290 at Stipulated Facts No. 5. WCC entered in a subcontract with InSite on November 23, 2010, for the performance of certain construction services in the Project (the "Subcontract"). Docket No. 237 Uncontested Facts No. 2; Docket No. 290 at Stipulated Facts No. 6. USIC issued a Subcontractor Performance Bond on March 22, 2011 (the "Bond") in the amount of $3,175,000, naming WCC as obligee and InSite as principal, to secure the faithful performance of InSite's obligations under the Subcontract with WCC. Docket No. 237 Uncontested Facts No. 3; Docket No. 290 at Stipulated Facts No. 7.

Paragraph 6(b) of the Bond provides that USIC could be liable for "[t]he responsibilities of [InSite] for additional legal and design professional costs resulting or arising from [InSite's] default or resulting or arising from actions or failure to act of [USIC under paragraph 4 of the Bond[1]]. Docket No. 1-2. Paragraph 6(c) of the Bond provides that USIC could also be liable for:

---

[1] Paragraph 4 of the Bond provides as follows:

"Whenever Obligee has declared Subcontractor to be IN DEFAULT OF THE SUBCONTRACT, the Surety shall, within fifteen (15) calendar days of its receipt of notice from Obligee that Subcontractor is in default, respond as follows:

a. Complete the Subcontract Work in accordance with the Subcontract terms and conditions; or

b. Obtain bids or offers from contractors acceptable to Obligee for completing the Subcontract in accordance with its terms and conditions, and upon determination by Obligee and the Surety jointly of the lowest responsible bidder or offeror, arrange for a subcontract between such completion contractor and the Obligee, and arrange for new performance and payment bonds for such completion contractor from a surety acceptable to the Obligee. […]; or

c. Tender to Obligee the penal sum of the Bond less any amounts expended by the Surety in financing the Subcontractor […].

d. [D]eny its liability in whole or in part and notify and explain to the Obligee the reasons why the Surety believes it does not have liability for the default,[…].

e. [O]btain an extension of up to fifty (50) calendar days in the time to act under this Paragraph 4 by financing performance of the Subcontract Work during the extension period on a schedule and in a manner acceptable to Obligee. […].

f. Upon declaration that Subcontractor is in default, Obligee may proceed to perform the Subcontract Work in accordance with the terms of the Subcontract. Obligee's cost to perform Subcontract Work shall be credited against any remaining Subcontract balance and then

"[t]he responsibilities of [InSite] for damages caused by the performance or non-performance of [InSite]. Id. At paragraph 7, the Bond provides: "Surety agrees to pay Obligee its reasonable attorney's fees and costs in the event that suit on this Bond is commenced and successfully prosecuted by Obligee." Id. And Article 9.3 of the Subcontract between WCC and InSite contains an indemnification provision where InSite agreed to indemnify WCC for all damages, losses, expenses and costs "arising out of or resulting from [InSite's] actual or alleged failure to perform under the [Subcontract]," including attorneys' fees and related costs and that such an indemnity obligation would extend to InSite's surety. Docket No. 1-1 at p. 10.

On December 30, 2011, after notification of the Notice of Default sent by WCC, InSite filed a Chapter 11 petition before the U.S. Bankruptcy Court for the District of Puerto Rico. Case No. 11-11209 (MCF) at Docket No. 1. On February 13, 2012, InSite moved the Bankruptcy Court for an order authorizing it to assume the Subcontract with WCC as an executory contract. Id. at Docket No. 44. On March 29, 2012, the Bankruptcy Court entered an Order granting InSite's Motion to Assume the Subcontract. Id. at Docket No. 72. However, InSite never returned to the site nor prosecuted any additional work under the Subcontract. WCC moved for a lift of stay so that it could terminate the Subcontract with InSite. Id. at Docket No. 107. The Bankruptcy Court denied WCC's motion for relief from stay. Id. at Docket No. 141.

On May 29, 2012, InSite initiated an adversary proceeding against WCC. Case No. 12-281(MCF) at Docket No. 1. On October 29, 2015, the Bankruptcy Court in the adversary proceeding issued an Opinion and Order holding that WCC did not violate the automatic stay. Id. at Docket No. 123. The Bankruptcy Court dismissed the Adversary Complaint on March 29, 2016. Id. at Docket No. 147. InSite appealed the decision to this District Court in Civil No. 16-2010 (FAB) and then to the U.S. Court of Appeals for the First Circuit. In re Insite Corporation, Inc., 906 F.3d 138 (1st Cir. 2018). The First Circuit agreed that WCC had not violated the automatic stay but remanded the case to the Bankruptcy Court to determine whether InSite was entitled to equitable recovery if WCC had benefited at InSite's expense. Id. After the remand, the Bankruptcy Court again dismissed the adversary proceeding on August 12, 2021. Case No. 12-281 (MCF) at

---

reimbursed by Surety. Reimbursement by Surety shall reduce the penal sum of this Bond by the amount of reimbursement to Obligee."

Docket Nos. 219-220. Another appeal to this District Court followed, which was dismissed on September 29, 2022. Civil No. 21-1404 (JAG).

On May 29, 2012, WCC filed breach of contract claims against USIC in this case seeking compensation under the Bond, which guaranteed the performance by InSite in the Project. Docket No. 1. WCC asserted two counts of breach of contract against USIC seeking compensatory and consequential damages, together with interest and costs, attorneys' fees, delay damages, and punitive damages. The case was stayed on September 28, 2015, pending the outcome of litigation before the Bankruptcy Court in In re: Insite Corporation, Case No. 11-11209 (MCF). Docket No. 179. The stay was lifted on July 1, 2022. Docket No. 197. InSite's bankruptcy petition was voluntarily dismissed on November 28, 2022. Case No. 11-11209 (MCF) at Docket Nos. 334, 337. The parties filed cross-motions for summary judgment, and, on July 19, 2024, the Court issued an Opinion and Order granting summary judgment in favor of WCC, finding USIC liable for breach of its obligations under the Bond. Docket No. 237. The case was set for a bench trial on damages.

In the proposed pretrial order, WCC informed that it would be seeking to recover $957,487.25 in fees and expenses. Docket No. 240 at p. 4. On September 30, 2024, USIC filed a motion for the Court to prevent WCC from presenting evidence of attorneys' fees and costs at trial, relying on the attorneys' fees provision of paragraph 7 of the Bond (which allowed for attorneys' fees and costs to the prevailing party) and Rule 54 of the Federal Rules of Civil Procedure. Docket No. 261. WCC opposed at Docket No. 263, USIC replied at Docket No. 270, and WCC sur-replied at Docket No. 273. After a pretrial conference, in the Amended Joint Pretrial Report, WCC alleged that: "From the inception of this instant matter through April 19, 2024, Walsh has incurred $957,487.25 in fees/expenses which are recoverable under the Subject Bond and the Subcontract. As noted above, the Subject Bond and Subcontract—which is incorporated in full by the Subject Bond—permit Walsh to recover fees and expenses. As noted at the hearing conducted in this matter on September 9, 2024, **Walsh is amenable to presenting the documentation related to said fees and expenses following trial in this matter provided that USIC agrees such a production is timely and Walsh's rights to recovery in this regard are not solely based on Fed.R.Civ.P. 54**." Docket No. 274 (emphasis added). Thereafter, the Court issued an order on USIC's motion in limine ruling: "[h]eld in abeyance pending bench trial." Docket No. 290; see also Docket No. 307 (finding motion in limine moot and stating: "[a]s agreed during trial, the issue of attorneys' fees and expenses will be dealt with after the entry of judgment on damages."). After the bench trial

and written submissions from both sides, the Court issued Judgment on November 5, 2025, awarding WCC $819,068.73 in damages, plus payment of reasonable attorneys' fees and costs. Docket No. 310. The instant motion for attorneys' fees and costs was filed within fourteen (14) days of the Judgment, on November 19, 2025. Docket No. 311.

There is no question that WCC was a prevailing party and that, consistent with paragraph 7 of the Bond, it would be entitled to reasonable attorneys' fees and costs incurred in this litigation. And for that we would look at Rule 54 of the Federal Rules of Civil Procedure and the application of the loadstar method.[2] The difficulty here is that WCC is not only seeking recovery of attorneys' fees and costs incurred during this litigation, but also attorneys' fees and costs incurred from the inception of the controversy between the parties stemming from InSite's default, USIC's failure to comply with paragraph 4 of the Bond, and InSite's bankruptcy proceedings, which lasted a full decade (from 2012 to 2022). USIC has opposed arguing that any such attorneys' fees and costs should have been sought in those proceedings and, if sought as part of this case against USIC, should have been established through evidence at trial.

Rule 54(d)(2)(A) of the Federal Rules of Civil Procedure provides that: "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." FED. R. CIV. P. 54(d)(2)(A). So, the question here is whether the attorneys' fees claimed by WCC that were not incurred in prosecuting this litigation would have had to have been "proved at trial as an element of damages."

[2] When the right to recoup attorney's fees stems from a contractual provision, "the question of what fees are owed is ultimately one of contract interpretation, and our primary obligation is simply to honor the agreement struck by the parties." DDR Del Sol LLC, S.E. v. Cajun & Grill of Am., Inc., 2015 WL 9273921, at *3 (D.P.R. Dec. 18, 2015) (quoting AccuSoft Corp. v. Palo, 237 F.3d 31, 61 (1st Cir. 2001)). Further, in an action of diversity jurisdiction, such as this one, the law that applies to the interpretation of any such contractual provision is the law of the state. Carrero v. Molina Healthcare of Puerto Rico, Inc., 737 F. Supp. 3d 135, 141 (D.P.R. 2024). "As a general rule, Puerto Rico law requires courts to apply a reasonableness requirement when imposing the legal expenses of one party on another." Id. at 141-42 (examining Puerto Rico fee-shifting statutes, the Puerto Rico Rules of Civil Procedure and Puerto Rico Civil Code provisions and concluding that "a commonwealth court would most likely apply a reasonableness requirement to contractually mandated awards of legal expenses in the absence of clear language to the contrary."). See also DDR Del Sol, 2015 WL 9273921, at *3 ("[T]he court may read into the contract a requirement that the requested fees be reasonable."). As such, to award attorneys' fees to WCC, the Court would examine the reasonableness of the requested fees and apply the loadstar method. Carrero, 737 F.Supp.3d at 143-49 (reference to "all" in the contractual provision for fees does not entitle the movant to uncapped indemnification). Under the loadstar method, the Court calculates the number of hours reasonably expended by attorneys multiplied by a reasonable hourly rate. Codex Corp. v. Milgo Electronic Corp., 717 F.2d 622, 631 (1st Cir. 1983).

And, if so, whether WCC waived its right to present evidence as to those fees by agreeing to postpone the issue of attorneys' fees until after trial. The answer to the second question is undoubtedly no. WCC opposed USIC's motion in limine and agreed to postpone the issue of attorneys' fees until after trial only after expressly reserving its rights to prove its entitlement to all attorneys' fees, including those that had to be established as elements of its claim for damages. See Amended Pretrial Report at Docket No. 274. However, the answer to the first question requires more analysis.

As explained in the Advisory Committee Notes of Rule 54(d)(1)(A), Rule 54(d)(1)(A) does not "apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury." FED. R. CIV. P. 54 Advisory Committee Note (1993). The fees sought by WCC are undoubtedly sought under a contract (the Bond and the Subcontract), but the reference to a contract in the advisory notes is merely an example. See Tech Pharmacy Servs., LLC v. Alixa Rx LLC, 298 F. Supp. 3d 892, 900 (E.D. Tex. 2017). Such a reference does not mean that every time attorneys' fees are negotiated in a contract, such a request for fees will automatically constitute an element of the claim for damages and exempted from Rule 54(d). Id. Indeed, "[c]ourt looks to the language of the contract to determine whether the attorneys' fees in [a] case are an element of damages or if they are collateral litigation costs." Id. (citation omitted). "In making this distinction, courts have differentiated between claims for attorney's fees based on 'prevailing party' contractual provisions and claims for attorney's fees based on other types of contractual provision". Rockland Tr. Co. v. Computer Associated Int'l, Inc., 2008 WL 3824791, at *5 (D. Mass. Aug. 1, 2008). When the contractual provision that allows for attorneys' fees is conditioned on the successful litigation of a claim (i.e. a prevailing party provision), the request for fees has been deemed to be a collateral matter to the litigation to be established after trial through the process set forth in Rule 54(d). Id. at *6 (internal citations omitted). But when the contractual provision that allows for recovery of attorney's fees is conditioned on a breach by one of the contracting parties, the request for attorneys' fees has been deemed part of the claim for damages ("analogous to any other claim for contract damages") and subject to proof at trial. Id. ("[T]he distinction between a claim for attorney's fees based on a prevailing party provision and attorney's fees based on a breach of contract is said to turn on the condition precedent to recovery. When a party seeks attorney's fees pursuant to a prevailing party provision, the condition precedent to

recovery is 'the successful litigation of a claim.'. Conversely, when a party seeks attorney's fees as a result of a breach 'the condition precedent to recovering legal costs is a breach of contract by [a party].'"); Pride Hyundai, Inc. v. Chrysler Fin. Co., LLC, 355 F. Supp. 2d 600, 605-07 (D.R.I. 2005) (making the same distinction and holding that the attorney's fees provision in that case was different from a prevailing party provision and contingent on the presentation of evidence at trial); Cognitive Edge Pte Ltd. v. Code Genesys, LLC, 2021 WL 4477434, at *3 (D. Mass. Sept. 30, 2021); Tech Pharmacy Servs, 298 F. Supp. 3d at 900-01 (fees agreed in addition to and as a separate claim (enforceable in separate action) from the harm in the contract are not part of the elements of damages claim and may be claimed under Rule 54).

A review of WCC's submission confirms that WCC is requesting attorneys' fees incurred in the prosecution of this litigation (e.g., many of the fees paid to DVH and fees incurred in mediation) and that those would be covered by the prevailing party provision in paragraph 7 of the Bond (the condition precedent for those fees was achieved when WCC prevailed in this litigation). However, admittedly, WCC is also seeking attorneys' fees incurred because of InSite's default, on account of the litigation before the Bankruptcy Court, and on appeals before this District Court and the First Circuit (e.g., preliminary legal fees paid to Jennings, Haug & Cunningham, L.L.P. and fees paid to DVH while the instant case was stayed). Those, as argued by WCC, may be recoverable under paragraphs 6(b) ("resulting or arising from [InSite's] default or resulting or arising from actions or failure to act of [USIC under paragraph 4 of the Bond]") and 6(c) ("for damages caused by the performance or non-performance of [InSite]") of the Bond, and under the indemnity provision of Article 9.3 of the Subcontract with InSite, which was anchored on InSite's "actual or alleged failure to perform under the [Subcontract]." As such, the trigger for those fees was not WCC's successful prosecution of this case but InSite's default or nonperformance under the Subcontract and USIC's failure to act under the Bond. Fees claimed under paragraphs 6(b) and 6(c) of the Bond and Article 9.3 of the Subcontract are thus elements of WCC's damages claims subject to proof at trial and not recoverable under Rule 54(d) of the Federal Rules of Civil Procedure. See e.g., Rockland Tr. Co., 2008 WL 3824791, at *6 (different to attorneys' fees that accrued after success in litigation, attorneys' fees that arose upon breach of the agreement by one of the parties were "a substantial element of damages under the existing case law and [had to] be proved to the trier of fact."); Lifespan Corp. v. New England Med. Ctr., Inc., 2011 WL 3841085, at *5-6 (D.R.I. Aug. 26, 2011) (indemnification provision that requires a party to indemnify

another for "losses caused by its misrepresentations, willful misconduct, or gross negligence" subject to proof at trial); Travelers Cas. & Sur. Co. of Am. v. Vazquez-Colon, 2024 WL 5245246, at *3-4 (D.P.R. Dec. 30, 2024) (holding that fees were a matter for the jury); Compare Consol. Biscuit Co. v. Karpen, 170 F. Supp. 2d 782, 784-85 (N.D. Ohio 2001) (finding that movant was requesting fees for work done in that litigation before the Court and did not require construction of a contract; fees were not an element of a damages claim and could be sought under Rule 54(d)(1)(A)).

Now, circling back to the second question above. There is no doubt that WCC made clear prior to trial that it intended to seek payment of all fees, including those incurred because of InSite and/or USIC's nonperformance. And, when it agreed to postpone the issue of fees until after trial, it expressly reserved its right to claim such fees, including those subject to evidence and not covered under Rule 54(d) of the Federal Rules of Civil Procedure. WCC submitted documentary evidence in support of those fees and costs. Therefore, in the absence of the pending appeal, it would be appropriate for this Court to conduct an evidentiary hearing to determine the amount, if any, of attorneys' fees properly recoverable as part of WCC's contractual damages. See e.g., Rockland Tr. Co., 2008 WL 3824791, *7 ("At trial, CA did not present evidence that showed precise attorney's fees as part of the damages for breach of contract. Nevertheless, I conclude this is not the end of line for CA's attorney's fees claim. In light of the fact that CA referenced this issue before the close of trial and because I declined to address this issue in my Findings and Conclusions, I find it fair and appropriate to permit further evidentiary development on the issue of attorney's fees."). The pending appeal, however, divests the Court of jurisdiction to proceed with an amended judgment.

Federal Rule of Appellate Procedure 4(a)(4)(A) enumerates post-judgment motions that, when timely filed, the district court may adjudicate pending an appeal. Those are motions under Rules 50(b), 52(b), 54, 59, and certain motions under Rule 60 of the Federal Rules of Civil Procedure. FED. R. APP. P. 4(a)(4)(A). WCC's request for attorneys' fees that would require proof at trial and, potentially, an amended judgment does not fall squarely under any of those provisions. It is not a motion under Rule 50(b) or Rule 52(b), nor, for the reasons discussed above, is it a motion for prevailing-party attorneys' fees under Rule 54(d). Neither does Rule 59 provide a clear basis for the Court to proceed. Motions under Rule 59 must be filed within 28 days after the entry of judgment. FED. R. CIV. P. 59(b), (e). And Rule 4(a)(4)(A)(vi) of the Federal Rules of Appellate

Procedure provides that a Rule 60 motion affects the time for appeal only when filed within the time prescribed for a Rule 59 motion. FED. R. APP. P. 4(a)(4)(A)(vi). Because nearly a year has passed since judgment was entered, neither Rule 59 nor Rule 60 of the Federal Rules of Civil Procedure allows the Court to exercise jurisdiction over WCC's claim for attorneys' fees as elements of its claim for damages and, if established by WCC, to amend the judgment while the case is pending on appeal.[3]

Nonetheless, Rule 62.1 of the Federal Rules of Civil Procedure applies when a party files a timely motion for relief which the district court lacks authority to grant because of a pending appeal. FED. R. CIV. P. 62.1 Advisory Committee Note (2009) ("This new rule adopts for **any motion** that the district court cannot grant because of a pending appeal the practice that most courts follow when a party makes a Rule 60(b) motion to vacate a judgment that is pending on appeal.") (emphasis added); Optum, Inc. v. Smith, 353 F.Supp.3d 127, 130 n. 4 (D. Mass 2017) (this rule applies to any motion, even when the matter in the motion differs from the matter pending on appeal); 11 Wright & Miller, Federal Practice and Procedure § 2911 (2026) (parties may seek an indicative ruling on matters other than Rule 60(b)). The rule allows the Court to defer consideration of the motion, deny the motion, or state that the motion raises a substantial issue or that the Court would grant the motion if the Court of Appeals remands for that purpose. FED. R. CIV. P. 62.1(a); Optum, 353 F.Supp.3d at 129 (the court "may" exercise any of the foregoing options but is not obliged to do so). If the district court states that it would grant the motion or that the motion raises a substantial issue, the movant must promptly notify the Circuit Clerk under Federal Rule of Appellate Procedure 12.1. FED. R. CIV. P. 62.1(b); Díaz-Morales v. Cruz-Vélez, 2022 WL 1090133, at *3 (April 12, 2022) (the Court stated that it would grant motion to stay proceedings under PROMESA under Rule 62.1 and ordered movants to promptly notify the Circuit Clerk of the determination); FED. R. CIV. P. 62.1 Advisory Committee Note (2009) (suggestion for remand commonly referred to as an "indicative ruling").

WCC's motion for attorneys' fees was timely as it was filed within the time limit provided by the Court in the Judgment and WCC had reserved its right to seek the fees, including those not covered under Rule 54. Because an appeal has been docketed, the Court now construes that motion

[3] WCC's motion for fees was filed within 14 days of the Judgment. If the motion were to be deemed a motion to amend the judgment, it could arguably be considered a timely motion under Rule 59(e) of the Federal Rules of Civil Procedure, and the Court would have jurisdiction to entertain it. However, in an abundance of caution, the Court proceeds under Rule 62.1.

as one under Rule 62.1 of the Federal Rules of Civil Procedure. Accordingly, pursuant to Federal Rule of Civil Procedure 62.1(a)(3), the Court states that WCC's motion raises a substantial issue concerning the determination of attorneys' fees as an element of WCC's contractual damages claim under the Bond and the Subcontract, which is distinct from the prevailing-party fee request under Rule 54(d). A remand to this Court would allow this Court to issue a judgment resolving all the controversies between the parties and the First Circuit to address all matters in one appeal.

The Court only anticipates the appropriateness of an evidentiary hearing and not whether additional damages will be imposed in favor of WCC on account of the sought fees. See e.g., Tamaki v. Tamaki, 2025 WL 1693821 *2 (D. Me. June 17, 2025). If the First Circuit remands the case, the Court will conduct an evidentiary hearing to determine the amount of attorneys' fees, if any, recoverable by WCC under the Bond and the Subcontract as part of its contractual damages claim. WCC is to promptly notify the Clerk of the First Circuit of this indicative ruling, as required by Federal Rule of Civil Procedure 62.1(c) and Federal Rule of Appellate Procedure 12.1. WCC's motion for attorneys' fees and costs in Docket No. 311 is **DENIED WITHOUT PREJUDICE**, pending a decision by the First Circuit. In the meantime, WCC is **ORDERED** to submit to the Court by **October 7, 2026**, those fees and costs incurred in the prosecution of this litigation that could be recouped under the prevailing party provision in paragraph 7 of the Bond so that USIC can respond to that request and the Court can evaluate the propriety of those fees under Rule 54 of the Federal Rules of Civil Procedure.

**3. WCC's Motion for Bond Pending Appeal**

USIC filed an appeal of the Court's Judgment. WCC moved the Court to compel USIC to post a bond pending appeal in the amount of $982,882.47, plus costs, attorneys' fees and interests accrued during the duration of the appeal. Docket No. 324. USIC opposed arguing that the imposition of a bond is not necessary given its ability to satisfy the judgment and requested that the Court order a stay of the enforcement of the Judgment pending appeal. Docket No. 325. USIC also argues that given its solvency and the fact that it maintains sufficient reserved funds to satisfy the judgment in this case, a bond would serve no protective purpose and would impose unnecessary costs and administrative burdens on USIC. Id.

Rule 62(b) of the Federal Rules of Civil Procedure provides that "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security." FED. R. CIV. P. 62(b). "The purpose of the supersedeas bond is to 'protect the interest of the creditor's right

under judgment during the pendency of appeal,' […] 'while protecting the other side against the risk that payment cannot be recouped if the decision should be reversed.'" Cognitive Edge Pte Ltd. v. Code Genesys, LLC, 2021 WL 4477434, at *4 (D. Mass. Sept. 30, 2021) (citations omitted). When the judgment is a monetary one, as the one here, posting a bond allows for the stay of enforcement of the judgment as a matter of right. 11 Wright, Miller & Kane, Federal Practice and Procedure § 2905 (2012); Cipes v. Mikasa, Inc., 404 F. Supp. 2d 367, 369 (D. Mass. 2005) (citing Acevedo-García v. Vera-Monroig, 296 F.3d 13, 17 (1st Cir. 2002)); Rebarber-Ocasio v. Feliciano-Muñoz, 2022 WL 17813005, at *2 (D.P.R. Nov. 2, 2022) (the 2018 amendments of Rule 62 did not change this general rule). "The First Circuit Court of Appeals has not directly addressed the question of when a district court may allow a stay that is unsecured by a superseded bond." Cipes, 404 F. Supp. 2d at 369 (citations omitted). However, waiver of the bond may be appropriate when the judgment debtor would have sufficient funds to pay the judgment if affirmed and there will be no delay in making such a payment. 11 Wright, Miller & Kane at §2905. To this end, "[c]ourts have held that no bond is required if: (1) the defendant's ability to pay is so plain that the posting of a bond would be a waste of money; or (2) the bond would put the defendant's other creditors in undue jeopardy." Acevedo-García, 296 F.3d 13 at 17 (citing Olympia Equipment Leasing Co. v. Western Union Tel. Co., 786 F.2d 794, 796 (7th Cir.1986)); Rebarber-Ocasio, 2022 WL 17813005, at *4 (one way to establish that bond should be waived is by proving ability to satisfy the judgment). In the Second and Seventh Circuits, courts examine the following factors: "(1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position." Rebarber-Ocasio, 2022 WL 17813005, at *3 (citations omitted) (judgment debtor should address these factors). But the burden rests with the judgment debtor to establish that a bond is not warranted and that the monetary judgment should be stayed pending appeal. Id. Ultimately, this is a matter "entrusted to the discretion of the trial court." Acevedo-García, 296 F.3d at 17 (citing Sckolnick v. Harlow, 820 F.2d 13, 15 (1st Cir.1987)).

In opposition to WCC's request for bond and in support of its request for a stay, USIC provided a statement under penalty of perjury of its Chief Financial Officer. Docket No. 325-1.

There, USIC established that USIC is currently in good standing with the Office of the Insurance Commissioner of the Commonwealth of Puerto Rico. Id. at ¶ 2 and Exhibit A. USIC's financial strength is rated A (Excellent) by an independent rating agency. Id. at ¶ 3 and Exhibit B. USIC maintains sufficient funds reserved in its bank accounts to satisfy any judgment of more than $2,000,000, including to satisfy the payment of attorneys' fees and post-judgment interests in this case. Id. at ¶ 5. And USIC maintains a reinsurance program underwritten by highly rated reinsurance carriers, which provides reimbursement to USIC in the event of payments made under the bonds issued by USIC. Id. at ¶ 6. The Court has nothing before it to call into doubt the assurances made by USIC. As argued by USIC, there are simply no allegations or evidence to establish that USIC is insolvent, uncapitalized or that it will be unable to satisfy the judgment if affirmed. As such, WCC's motion for a bond is **DENIED** and USIC's request that the enforcement of the monetary judgment be stayed without the posting of a bond is **GRANTED**.[4]

## II. Conclusion

For the reasons discussed above, USIC's motion for additional findings of fact is **DENIED,** WCC's motion for attorneys' fees and costs is **DENIED WITHOUT PREJUDICE** subject to a future hearing where WCC can prove the damages claim pertaining to attorneys' fees and costs, WCC's motion for bond is **DENIED,** and USIC's request for a stay of the monetary judgment without a bond is **GRANTED**. WCC's motion under Rule 54 of the Federal Rules of Civil Procedure is due by **October 7, 2026**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 23rd day of September, 2026.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge

[4] Further, because the case may be remanded for further proceedings before this Court pursuant to Rule 62.1 of the Federal Rules of Civil Procedure, and the judgment may ultimately be amended to include any attorneys' fees that WCC could prove as part of its claim for damages against USIC before the case proceeds on appeal, a stay on enforcing the monetary judgment and a denial of the bond is logical.